**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| _____ | : | |
| NEW JERSEY CARPENTERS FUNDS; | : | |
| NEW JERSEY REGIONAL COUNCIL | : | |
| OF CARPENTERS, | : | |
| | : | |
| Petitioners, | : | Civil Action No. 3:08-cv-3690-FLW |
| | : | |
| | : | |
| v. | : | |
| | : | |
| PROFESSIONAL FURNITURE | : | |
| SERVICES, | : | |
| | : | **OPINION** |
| Respondent. | : | |
| | : | |
| _____ | : | |

**Wolfson, United States District Judge**:

Presently before the Court is a Motion brought by Petitioners New Jersey Carpenter Funds and New Jersey Regional Council of Carpenters (collectively "Petitioners") to vacate an arbitration award issued pursuant to the Federal Arbitration Act ("FAA") in a dispute with Respondent Professional Furniture Services ("Respondent"). For the following reasons, Petitioners' Motion is granted and the Arbitrator's Award is vacated.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Petitioner New Jersey Regional Council of Carpenters ("Carpenters Union") and Respondent are parties to a collective bargaining agreement ("CBA"), entered into on May 1, 2002. Affidavit of Ed O'Hare ("O'Hare Aff."), Exh. C, CBA. In accord with the CBA, Carpenters Union and Respondent executed a Short Form Agreement. O'Hare Aff., Exh. B, Short Form Agreement.

1

The Short Form Agreement required that Respondent pay contributions to Petitioner New Jersey Carpenter Funds ("Funds") on behalf of bargaining unit employees. Id.  In late 2006, the Funds requested that Respondent submit to an audit of its records.  After Respondent refused to comply, an arbitration hearing was held on January 4, 2007, in which the arbitrator directed Respondent to "immediately cooperate in the performance of an audit."  Petitioners moved in United States District Court in the New Jersey for confirmation of the January 4th award, which the Honorable Peter G. Sheridan, U.S.D.J., granted on April 3, 2007.  On September 12, 2007, the Funds sent a letter to Respondent containing a copy of the audit conducted on Respondent's payroll for the time period of January 1, 2005 through March 31, 2007.  O'Hare Aff., Exh. E, Audit.  The audit revealed that Respondent owed over 1,036,917.36 in outstanding contributions to the Funds pursuant to the CBA.  Id.

The dispute over whether Respondent owed the entire amount specified in the audit was heard by Aribtrator J.J. Pierson ("Arbitrator").  O'Hare Aff., Exh. A, Arbitrator's Award and Order. Two hearings were held, one on November 12, 2007 and another on November 29, 2007. Id. According to Respondent, the dispute centered around whether Respondent is required to remit contributions on behalf of non-union workers.  Petitioners maintained that the CBA requires Respondent to make contributions for all bargaining unit employees, meaning union and non-union, when Respondent uses the Carpenter's Union for various work projects.  At the arbitration hearing, Respondent argued that the CBA required it to make contributions for only those employees that were part of the union.  On April 27, 2008, the Arbitrator entered an Award and Order in favor of Respondent.  Id.  The Award specified that Respondent was only responsible to remit contributions for union employees.  Id.  Accordingly, the Arbitrator ordered

that Respondent pay $30,000 in delinquent contributions, $1,000,000 less than requested by Petitioners.  In addition, Respondent was ordered to pay legal fees and costs for the Funds. Id.

On July 22, 2008, Petitioners initiated this action in the United States District Court for the District of New Jersey to vacate the Arbitrator's Award and Order.  For the reasons that follow, the Court grants Petitioners' Motion to Vacate the Arbitrator's Award.

## II. DISCUSSION

### A. Standard of Review

Pursuant to the Federal Arbitration Act ("FAA"), there is a strong presumption in favor of enforcing arbitration awards.  Brentwood Medical Associates v. United Mine Workers of America, 396 F.3d 237, 241 (3d Cir. 2005).  The Act underscores the overarching federal policy favoring arbitration to resolve labor disputes.  Major League Baseball Players Association v. Garvey, 532 U.S. 504 (2001); see also Penntech Papers, Inc. v. United Paperworkers Int'l Union, 896 F.2d 51, 53 (3d Cir. 1990) (finding that the overwhelming presumption in favor of arbitration awards "protect[s] the benefits of labor arbitration, namely, speed, flexibility, informality, and finality.").  Accordingly, a district court may only vacate an arbitrator's award in limited circumstances:

> (1) where the award was procured by corruption, fraud or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §10(a); see also United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d

376, 379 (3d Cir 1995).  "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely ' his own brand of industrial justice,' the award is legitimate." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987) (quoting Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960); Exxon Shipping Company v. Exxon Seamen's Union, 801 F. Supp. 1379, 1384 (3d Cir. 1992).  Recently, the Second Circuit expounded on the rationale behind the deference to an arbitration award:

> Vacatur of an arbitral award is unusual for good reason: The parties agreed to submit their dispute to arbitration, more likely than not to enhance efficiency, to reduce costs, or to maintain control over who would settle their disputes and how-or some combination thereof.

Stolt-Nielsen SA v. AnimalFeeds International Corp., 548 F.3d 85, 92 (2d Cir. 2008).  A court may, however, vacate an arbitration award if the arbitrator's decision is wholly unsupported by the agreement's plain language or the arbitrator fails to adhere to basic principles of contract construction.  News Am. Publications, Inc., Daily Racing Form Div. v. Newark Typographical Union, Local 103, 921 F.2d 40, 41 (3d Cir. 1990); Exxon Shipping, 801 F. Supp. at 1384.

    This Court may not "sit as the panel did and reexamine the evidence." Mutual Fire, Marine, & Inland Ins. Co. v. Norad Reins. Co., Ltd., 868 F.2d 52, 56 (3d Cir.1989). Thus, if an "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" Eastern Associated Coal Corp. v. United Mine Workers of America, District 17, 531 U.S. 57, 62 (2000) (quoting Misco, 484 U.S. at 38).  In other words, it is not within the province of this Court to substitute its judgment for that of an arbitrator's, however injudicious it may be. Rather, Congress' intent in passing the FAA and concurrent policy considerations guide this

Court's obligation to uphold an arbitrator's judgment if the decision, on its face, was drawn from the parties' agreement or is remotely based on reasonable contractual interpretation. See United Trans. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379 (3d Cir.1995).

Alternatively, courts have vacated arbitration awards in instances where the arbitrator demonstrates a manifest disregard for the applicable law.  Although not explicitly enumerated as a grounds for vacatur under the FAA, the Third Circuit has recognized the "manifest disregard of the law doctrine [as] a judicially-created one that is to be used 'only [in] those exceedingly rare circumstances where some egregious impropriety on the party of the arbitrators is apparent, but where none of the provisions of the [FAA] apply." Black Box Corp. v. Markham, 123 Fed. Appx. 22, 25 (3d Cir. 2005). To prevail under this doctrine, the moving party must demonstrate that the arbitrator ignored law that was "well defined, explicit, and clearly applicable to the case." Koken v. Cologne Reinsurance (Barb.) Ltd., No. 98-0678, 2006 U.S. Dist. LEXIS 59540, at *6, 2006 WL 2460902 (M.D.Pa. Aug. 23, 2006); O'Leary v. Salomon Smith Barney, Inc., No. 05-6016, 2008 WL 5136950, at *4 (D.N.J. Dec. 5, 2008).

Here, the Court will first determine whether the Arbitrator's construction of the CBA was so irrational and unreasonable that in doing so, the Arbitrator exceeded the scope of the CBA.

**B. The Arbitrator's Interpretation of the CBA**

Initially, Petitioners contend that the Arbitrator's decision should be vacated as it is clearly unrelated to the essence of the parties' CBA.  In response, Respondent directs this Court's attention to various provisions of the CBA, that it argues, demonstrate the CBA was intended only to cover Carpenter Union employees.

The relevant language from the Short Form Agreement states:

5

> Whereas, the Contractor is engaged in the building and construction business and desires to employ employees represented by the Local Union and/or District Councils of the United Brotherhood of Carpenters and Joiners of America, AFL-CIO in their respective territorial jurisdictions which employment will require payments to the New Jersey Carpenters Pension Fund. . .Witnesseth, the undersigned agree to be bound by every current collective bargaining agreement between the Local Unions or District Councils and Building Contractors Association of New Jersey, governing wages , working conditions and payments to fringe benefit funds which agreement is incorporated herein by reference.

O'Hare Aff., Exh. B, Short Form Agreement.  In the instant matter, the Arbitrator's determination that the parties intended to exempt non-union employees from Respondent's contribution requirement explicitly cuts against the essence of the parties' CBA.  In coming to his conclusion, the Arbitrator failed to identify one instance in the CBA where the agreement differentiates between union and non-union employees. See O'Hare Aff., Exh. A, Arbitrator's Decision.  To the contrary, the CBA explicitly designates the Carpenters Union as the "authorized bargaining agent for all classes of employees performing work within the work jurisdiction." O'Hare Aff., Exh. C, CBA Art. I (emphasis added).   "Work jurisdiction," as defined by the CBA, merely outlines general descriptions of tasks taken on by carpenters and joiners.  Id. Art. X.  Article X makes no mention of union membership as a bar to inclusion of those employees within the CBA's "work jurisdiction."  Id.

Further, the Arbitrator acknowledged that the Short Form Agreement "'was bound by every collective bargaining agreement between the Local Union or District Councils and the Building Contractors Association of New Jersey, governing wages, working conditions, and payments to fringe benefit funds which agreement is incorporated herein by reference."  O'Hare Aff., Exh. A, Arbitrator's Decision.  How the Arbitrator could de-couple the CBA's intended reach from Respondent's obligation to pay contributions for all bargaining unit employees is not only

6

outside the bounds of the CBA but betrays basic principles of contract interpretation.

Indeed, the recognition clause in the parties' CBA forecloses any discussion about the CBA's reach.  In <u>Trustees of the Southern California IBEW-NECA Pension Trust Fund</u>, 519 F.3d 1045, the Ninth Circuit held that a recognition clause "yield[s] only one reasonable interpretation: the collective bargaining agreements cover all of. . .electrical workers engaged in project work." <u>Id.</u> at 1048.  In response, Respondent cites to several provisions, which it claims, indicates the parties' intent to limit Respondent's obligations under the CBA to union members.  Specifically, Respondent cites Article IV, the Union Security Clause, as dispositive evidence that the Arbitrator's interpretation of the CBA's reach is rational:

> All employees who are present members of the Union shall maintain their membership in good standing in the Union in order to continue in employment. All new employees on the eight day following the beginning of their employment or the execution date of this Agreement or the effective date of this agreement, whichever is later, shall become and remain members in good standing of the Union in order to continue in employment, all to be applied and enforced in accordance with the provisions of the National Labor Relations Act, as amended.

O'Hare Aff., Exh. C, CBA Art. IV.  Notwithstanding this provision, Article I of the CBA defines "employees" as those workers "who perform work within the trade-line jurisdiction of the United Brotherhood of Carpenters and Joiners of America in the matters of wage, hours of work and all other working conditions." <u>Id.</u> Art. I.  "The presence in the agreement of a recognition clause designating the union as the exclusive bargaining agent for all employees indicates that fringe benefit contributions are required for both union and non union members." <u>Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co.</u>, 749 F.2d 315, 318 (6th Cir. 1984); <u>Trustees of Southern California IBEW-NECA Pension Trust Fund</u>, 519 F.3d 1045, 1047 (9th Cir. 2008) (<u>quoting</u> <u>Kohn</u>).  Moreover, Respondent's recitation of the CBA's union shop clause requiring

union dues cannot be reasonably construed to render the CBA only applicable to union members. First, "union shop clauses have been construed to require only payment of union dues and not union membership." Id. The Supreme Court has held that "[f]ull union membership is not compelled by the [union security] clauses: an employee is required only to become and remain 'a member of the Union to the extent of paying his monthly dues.'" NLRB v. Allis-Chalmers Manufacturing Co., 388 U.S. 175, 196 (1967) (citation omitted).   Second, interpreting the CBA to only cover union members would render Article I of the CBA surplusage.[1]  Here, the

---

[1]In support of this Motion, Petitioners direct the Court's attention to numerous cases within this Circuit and others, holding that for the purposes of a CBA, an employer must pay contributions on behalf of all bargaining unit employees, regardless of union membership. Petitioners contend that this precedent is clear and explicit; thus, the Arbitrator's decision to not recognize this precedent constitutes a manifest disregard of the law. Of particular importance is the Third Circuit's decision in Byrnes v. DeBolt Transfer, Inc., 741 F.2d 620 (3d Cir. 1984), in which it found for the petitioners, a number of pension funds, seeking contributions on behalf of all employees from the employer respondent.  The respondent argued, inter alia, that non-union employees were not covered by the parties' collective bargaining agreement.  In rejecting this argument, the Third Circuit stated:

> [t]he absence of any distinction in the agreements between union and non-union members can be easily explained: the law does not permit such a distinction. Section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. 158(a)(3) provides as follows:
>
>> It shall be an unfair labor practice for an employer-by discrimination in regard to hire or tenure to of employment or any term or condition of employment to encourage or discourage membership in any labor organization
>
> The Supreme Court made clear in Radio Officers' Union v. NLRB, 347 U.S. 17, 39-42 (1954), that section 8(a)(3) meant precisely what it said: an employer may not encourage or discourage union membership by means of discrimination.  The district court found that [the Respondent's] practice of making contribution to the Funds on behalf of union members only will encourage union membership. . . .Accordingly, section 8(a)(3) prohibits such a practice.

Recently, however, the Supreme Court cast doubt on the viability of the manifest disregard of

Arbitrator's interpretation suggests that there is no distinction between "those employees covered by this agreement" and members of the Carpenters Union.  However, such a reading belies the simple construction of the clause, that being, in order for employees covered by the CBA to become union members, there would have to be in fact two classes of employees covered by the CBA.  Again, such a construction of the parties' CBA runs afoul of basic principles of contractual interpretation and the CBA itself. Instead, the Arbitrator adopted Respondent's equitable interpretation of the CBA, an interpretation not supported by the terms of the parties' agreement.  O'Hare Aff., Exh. A, Arbitrator's Decision ("The Employer requested the Arbitrator to consider an equitable interpretation and application of the [CBA]").   However, the FAA does not permit an arbitrator to yield to equitable considerations but requires him to enforce the explicit terms of the agreement at issue.

Similar to the case at bar, in <u>Kohn</u>, the Sixth Circuit held that the Respondent employer was

---

law doctrine, finding that manifest disregard of the law was not one of the enumerated, exclusive grounds for vacataur under Section 10 of the FAA. <u>Hall Street Associates v. Mattel, Inc.</u>, 128 S.Ct. 1396, 1405 (2008). In light of <u>Hall Street</u>, circuit courts have differed over whether the manifest disregard doctrine survives. <u>Ramos-Santiago v. United Parcel Service</u>, 524 F.3d 120, 124 n. 3 (1st Cir. 2008) (finding that the doctrine of manifest disregard does not survive the Court's holding in <u>Hall Street</u>); <u>Stolt-Nielsen SA.</u>, 548 F.3d at 95 (finding that <u>Hall Street</u> "did not. . .abrogate the 'manifest disregard' doctrine altogether.").  Notwithstanding, the threshold for a showing of manifest disregard of the law remains high.  Ultimately, a party seeking relief from an arbitration award must demonstrate "more than error or misunderstanding with respect to the law," but rather a complete disregard for well-settled legal principle.  <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker</u>, 808 F.2d 930, 933 (2d Cir.1986); <u>Black Box Corp</u>, 127 Fed. Appx. at 25.  Indeed, "a court reviewing an arbitration award for manifest disregard of the law should not vacate the award unless it finds both that the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and the law ignored by the arbitrators was well defined, explicit and clearly applicable to the case."  <u>Merrill Lynch, Pierce, Fenner & Smith Inc. v. Millar</u>, 274 F. Supp. 2d 701, 706 (W.D. Pa. 2003).  Here, the Court need not determine whether the Arbitrator manifestly disregarded the law because it already finds that the Arbitrator exceeded his power in interpreting the CBA's reach.

obligated to make contributions on behalf of all of its employees, regardless of union membership.  In support of its position, the Respondent pointed to the parties' agreement which contained a union security clause; in fact, the clause in <u>Kohn</u> is nearly identical to the one in the case at bar.[2]  The court rejected this interpretation, stating "to construe the term 'employees' to mean union members would render the language of the union shop clause surplusage. . . .This construction effectively interprets the union shop clause to require union members to become union members, and renders the clause meaningless." <u>Kohn</u>, 749 F.2d at 318-19.  The same may be said here. The Court recognizes that an arbitrator's decision is to be given great deference; those instances where an award should be vacated are extremely rare.  Nonetheless, the Court finds that the Arbitrator's decision in the case at bar is one of those rare instances, and as such, rises to the level of vacatur under the FAA. It is unequivocally clear, given the clear and explicit language in the CBA, that the Arbitrator's order exceeds his powers.  Accordingly, the Court grants Petitioners' Motion to Vacate the Arbitrator's Award.

## III. CONCLUSION

For the foregoing reasons, Petitioners' Motion to Vacate the Arbitrator's Award is granted.


Dated: February 25, 2009                         s/ Freda L. Wolfson
                                                 **Freda L. Wolfson, U.S.D.J.**

---

[2]The clause in <u>Kohn</u> read in part: "It shall be a condition of employment that all employees of the Employers covered by this Agreement, who are members of the Union in good standing on the effective date of this Agreement, shall remain members in good standing by the payment of membership dues."

10